In the Matter of CHARLES G. HOFFMAN, an Attorney, Respondent.

First Department, October 21, 1941.

*S. C. Lewis* of counsel [*Einar Chrystie*, attorney], for the petitioner.

*Milton S. Gould* of counsel [*Samuel H. Kaufman*, attorney], for the respondent.

PER CURIAM. The basic facts upon which the referee has reported that the respondent is guilty of professional misconduct have been conclusively established by the uncontradicted testimony. He concededly engaged extensively in the business of aiding aliens, illegally within the United States and subject to arrest and deportation, to gain ostensible legal entry into the United States. This he accomplished by procuring their illegal entry into Canada, in violation of its immigration laws and the rules and regulations applicable thereto, for the purpose of obtaining from the United States consular officers therein located quota visas enabling them to re-enter the United States.

The aliens were smuggled into Canada by two individuals to whom the respondent agreed to pay $100 for each person thus gaining entry therein. Neither of these individuals was an attorney nor connected with the Canadian Immigration Department, in fact one, Mr. Gerard A. Glantz, was the proprietor of the Windsor Home Furniture Company in Windsor, Canada, and the other, Mr. Louis Meconi, conducted a steamship agency, also located in Windsor, Canada.

The respondent's claim that he relied upon the statement of said persons that their methods were in compliance with the Canadian immigration laws and regulations is utterly incredible and directly contradicted by the attendant facts and circumstances.

In this connection the report of the referee contains the following: " The respondent claims to have believed that the methods employed by Glantz and Meconi were lawful. In view of his familiarity with the immigration laws and the advice given his clients, and the secrecy employed in smuggling them over the border, with which he was familiar, I regard his testimony with respect that he believed the laws of Canada on the subject ambiguous and obscure and that the methods employed by Glantz and Meconi were lawful, as so highly improbable as to be unworthy of belief."

In addition, the respondent knew none of his clients had any papers when they entered Canada, as the respondent himself had sent them to the United States Consul in Canada. Furthermore, two of the aliens who were smuggled across the Detroit river to Canada in rowboats complained to the respondent (who, shortly after the crossing, met them on the Canadian side) of the dangers incurred in the crossing. In one case, because of the ice in the river, the two fishermen who were in charge of the crossing found it necessary at times to push the boat by walking on the ice. In response to the remonstrances of one of these clients, the respondent stated: " This was the easiest way to come here." To the other he said: " Never mind, you are here." That he knew and approved of the methods employed by his agents is the only conclusion that reasonably can be reached upon this record.

Following the discovery of his aforesaid activities and his knowledge that his conduct was being investigated by the petitioner herein, the respondent changed his tactics. He thereafter aided and abetted two clients to gain entrance into Canada upon the false representation that they intended to reside permanently therein, whereas in fact they intended to reside there only until quota visas were obtained which would permit their re-entry into the United States.

It also appears that the respondent was retained by a Mrs. Desenhouse to obtain legal entry into the United States of her two sons by a former marriage. One was then in this country under a six-month temporary permit and the other was in Poland. On respondent's advice, Mrs. Desenhouse deeded real property she owned in Binghamton, N. Y., to the son then in this country, to establish that he would not become a public charge. The respondent then procured his illegal entry into Canada and his subsequent re-entry into the United States. At about the same time, the respondent had undertaken to aid Mrs. Desenhouse's son in Poland to obtain entry into this country. Although he

knew the Binghamton property had been deeded by Mrs. Desenhouse to the son in this country, the respondent consistently represented to the American Consul at Warsaw, Poland, that Mrs. Desenhouse's annual income (based largely upon her ownership of this property) was $1,400. These statements were the basis of an application to permit the entry into this country from Poland of Mrs. Desenhouse's second son. The respondent's alleged reason for submitting the same property as the basis for these two applications was that it was due to " careless confusion." The finding of the referee that such explanation was without basis and that respondent's " weak excuse is not worthy of a moment's consideration " is clearly established by the evidence.

It is clear that the respondent in so using Mrs. Desenhouse's property to establish that her two sons (aliens seeking to enter the United States from two foreign countries) would not become public charges, violated the law. (See *United States* v. *Goldsmith*, 108 F. [2d] 917.)

The testimony of the various witnesses, particularly that given by the respondent himself, conclusively established that he had little, if any, understanding of the ethical standards required of members of the legal profession.

The respondent should be disbarred.

Present — MARTIN, P. J., O'MALLEY, GLENNON, UNTERMYER and DORE, JJ.

Respondent disbarred.